COHEN KINNE VALICENTI & COOK LLP
David Valicenti (*pro hac vice*)
 *dvalicenti@cohenkinne.com*
Christopher M. Hennessey (*pro hac vice*)
 *chennessey@cohenkinne.com*
28 North Street, 3rd Floor
Pittsfield, Massachusetts  01201
Telephone:  (413) 443-9399
Facsimile:  (413) 442-9399

BLECHER COLLINS PEPPERMAN & JOYE, P.C.
Maxwell M. Blecher (State Bar No. 26202)
 *mblecher@blechercollins.com*
Kristen M. Peters (State Bar No. 252296)
 *kpeters@blechercollins.com*
515 South Figueroa Street, Suite 1750
Los Angeles, California 90071-3334
Telephone: (213) 622-4222
Facsimile: (213) 622-1656

Attorneys for Defendant
BOSTON SYMPHONY ORCHESTRA, INC.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISIONS OF AMERICA, LLC, a California limited liability company, | ) Case No. CV 13-4355 PA (JEMx ) ) |
| | ) |
| Plaintiff, | ) **DEFENDANT BOSTON SYMPHONY** |
| | ) **ORCHESTRA, INC.'S MEMORANDUM** |
| v. | ) **OF POINTS AND AUTHORITIES IN** |
| | ) **SUPPORT OF MOTION TO DISMISS** |
| BOSTON SYMPHONY | ) **FOR LACK OF PERSONAL** |
| ORCHESTRA, INC., a Massachusetts | ) **JURISDICTION, OR** |
| nonprofit corporation, | ) **ALTERNATIVELY TO DISMISS FOR** |
| | ) **IMPROPER VENUE OR TRANSFER** |
| Defendant. | ) **VENUE** |
| | ) |
| | ) Judge:  Hon.  Percy Anderson |
| | ) |
| | ) Date:       October 28, 2013 |
| | ) Time:       1:30 P.M. |
| | ) |

**Table of Contents**

I.      Introduction …………………………………………………….....1

II.     The Allegations in the Complaint………………………….……..….2

III.    Jurisdictional Facts…………………………………………………….3

        A.     The BSO's Contacts with California…………………..……...3

        B.     The Agreement……………..………………………………...4

IV.     Argument……………………………………………………………6

        A.     Standard……………………………………………..………..6

        B.     There Is No General Jurisdiction Over the BSO in California……..…..7

        C.     There Is No Specific Jurisdiction over the BSO………………10

        D.     Venue……………………………………………………..12

               i.  Dismissal For Improper Venue or Transfer Pursuant to
                   28 U.S.C. §1406(a)……………………………………14

               ii. The Court Should Transfer this Case to the District of Massachusetts
                   Pursuant to 28 U.S.C. §1404…..…………………..……………..14

                   1.    This Action Could Have Been Brought in the District of
                         Massachusetts………………………….……………..………...14

                   2.    Standard for Transfer of Venue…………………………14

                   3.    The Agreement Was Negotiated In Massachusetts……..………15

                   4.    Massachusetts Law Applies to this Contract Dispute……..……15

                   5.    The Majority of the Key Witnesses and Evidence Is in
                         Massachusetts and Compulsory Process Is Not Available to Non-
                         Party Witnesses………………………………….…………16

Blecher Collins
Pepperman & Joye

6.   Plaintiff's Choice of Forum Is not Dispositive Because Plaintiff has No Contacts Relating to its Cause of Action in the Chosen Forum…………………………………………………………..18

7.   Judicial Economy Favors Transferring this Case to Massachusetts……………………………………………19

V.   Conclusion………………….………………………………………..20

Blecher Collins
Pepperman & Joye

DEFENDANT'S MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK
OF PERSONAL JURISDICTION, OR TO DISMISS FOR IMPROPER VENUE OR TRANSFER VENUE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



Blecher Collins
Pepperman & Joye

# Table of Authorities

**Cases**

*Allstar Mktg. Group, LLC v. Your Store Online, LLC,*
  666 F.Supp.2d 1109 (C.D.Cal. 2009) .................................................................. 15

*Alltrade. Inc., v. Uniweld Products, Inc.,*
  946 F.2d 622 (9th Cir.1991) ............................................................................ 19

*Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.,*
  551 F.2d 784 (9th Cir. 1977) .............................................................................. 6

*Amoco Egypt Oil Co. v. Leonis Navigation Co.,* '
  F.3d 848 (9th Cir. 1993) .................................................................................. 7

*B & B Hardware, Inc. v. Hargis Industries, Inc.,*
  2006 WL 4568798 (C.D.Cal. 2006) ................................................................... 18

*Bancroft & Masters, Inc. v. Augusta Nat. Inc.*
  223 F.3d 1082 (9th Cir. 2000) ....................................................................... 7, 10

*Boschetto v. Hansing,* 539
  F.3d 1011 (9th Cir. 2008) ................................................................................. 6

*Brady v. Conseco, Inc.,*
  2009 WL 2356201 (N.D.Cal. 2009) ..................................................................... 9

*Brand v. Menlove Dodge,*
  796 F.2d 1070 (9th Cir. 1986) .......................................................................... 10

*Burger King Corp. v. Rudzewicz,*
  471 U.S. 462 (1985) ...................................................................................... 12

*CollegeSource, Inc. v. AcademyOne, Inc.*
  653 F.3d 1066 (9th Cir. 2011) ........................................................................... 9

*Congoleum Corp. v. DLW Aktiengesellschaft,*
  729 F.2d 1240 (9th Cir.1984) ............................................................................ 9

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.,*
  557 F.2d 1280 (9th Cir. 1977) ............................................................................ 6

*Decker Coal Co. v. Commonwealth Edison, Co.,* 805
  F.2d 834 (9th Cir.1986) .................................................................................. 15

*Doe v. Unocal Corp.,*
  248 F.3d 915 (9th Cir. 2001) ............................................................................. 6

*Eliminator Custom Boats v. American Marine Holdings, LLC,*
  2006 WL 4941830 (C.D.Cal. 2006) ..................................................................... 9

*Focht v. Sol Melia S.A.,*
  2012 WL 162564 (N.D. Cal. 2012) ..................................................................... 9

-iii-

DEFENDANT'S MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK
OF PERSONAL JURISDICTION, OR TO DISMISS FOR IMPROPER VENUE OR TRANSFER VENUE

*Frontier Oil Corp. v. RLI Ins. Co.*,
  53 Cal.App.4th 1436, 63 Cal.Rptr.3d 816 (Cal.Ct.App.2007) ............................... 16

*Gates Learjet Corp. v. Jensen*,
  43 F.2d 1325 (9th Cir. 1984) ..................................................................... 8

*Gator.com Corp. v. L.L. Bean, Inc.*,
  41 F.3d 1072 (9th Cir. 2003) .................................................................. 7, 8

*Gill v. Simpson*,
  2012 WL 4863808 (E.D.Cal. 2012) ........................................................... 19

*Global Decor, Inc. v. Cincinnati Ins. Co.*
  2011 WL 2437236 (C.D.Cal. 2011) ........................................................... 18

*Hanson v. Denckla*,
  357 U.S. 235 (1958) ............................................................................... 12

*Heley v. Spencer*,
  2010 WL 669220 (C.D.Cal. 2010) ............................................................ 15

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
  466 U.S. 408 (1984) ............................................................................... 15

*Injen Tech. Co. Ltd. v. Advanced Engine Mgmt.*,
  270 F.Supp.2d 1189 (S.D.Cal. 2003) .......................................................... 9

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ............................................ 6

*Johnson v. Zepp*
  2010 WL 5116697 (C.D.Cal. 2010) ........................................................... 18

*Jones v. GNC Franchising, Inc.*,
  211 F.3d 495 (9th Cir. 2000). ................................................................... 15

*King v. Am. Family Mut. Ins. Co.*,
  632 F.3d 570 (9th Cir. 2011) ...................................................................... 7

*Lou v. Belzberg*,
  834 F.2d 730 (9th Cir. 1987) ................................................................... 18

*LP Digital Solutions v. Signifi Solutions, Inc.*,
  2013 WL 425091 (C.D.Cal. 2013) ............................................................. 10

*Mavrix Photo, Inc. v. Brand Technologies, Inc.*
  647 F.3d 1218 (9th Cir. 2011) .................................................................... 9

*Narayan v. EGL, Inc.*
  616 F.3d 895 (9th Cir. 2010) ................................................................... 15

*Pac. Car & Foundry Co. v. Pence*,
  403 F.2d 949 (9th Cir.1968) .................................................................... 18

Blecher Collins
Pepperman & Joye

BC
PJ

-iv-

*Pebble Beach Co. v. Caddy,*
 453 F.3d 1151 (9th Cir. 2006) ........................................................... 6

*Perkins v. Benguet Consolidated Mining Co.,*
 342 U.S. 437 (1952) ............................................................................. 8

*Schwarzenegger v. Fred Martin Motor Co.,*
 374 F.3d 797 (9th Cir. 2004) .................................................... 6, 7, 10

*Shute v. Carnival Cruise Lines,*
 897 F.2d 377 (9th Cir. 1990) ............................................................... 9

*Shute v. Carnival Cruise Lines,*
 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) ...................... 9

*Stewart Org., Inc. v. Ricoh Corp.,*
 487 U.S. 22 (1988) ............................................................................. 14

*World-Wide Volkswagen Corp. v. Woodson,*
 444 U.S. 286 (1980) ........................................................................... 11

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme,*
 433 F.3d 1199 (9th Cir. 2006) ............................................................. 7

**Statutes**

28 U.S.C. § 1332 ...................................................................................... 14

28 U.S.C. § 1391 ...................................................................................... 13

28 U.S.C. § 1391(b) .................................................................................. 13

28 U.S.C. § 1391(b)(1) ........................................................................ 13, 14

28 U.S.C. § 1391(b)(2) .............................................................................. 14

28 U.S.C. § 1391(b)(3) .............................................................................. 14

28 U.S.C. § 1404 ............................................................................... 1, 2, 14

28 U.S.C. § 1404(a) .................................................................................. 14

28 U.S.C. § 1406(a) ..................................................................... 1, 2, 12, 13

California Civil Code § 1646 .................................................................... 16

**Rules**

Federal Rule of Civil Procedure 12(b)(2) .............................................. 1, 8

Federal Rule of Civil Procedure 12(b)(3) ............................................ 1, 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Blecher Collins
Pepperman & Joye

Blecher Collins
Pepperman & Joye

1    Defendant Boston Symphony Orchestra, Inc. (the "BSO") submits this
2  memorandum of points and authorities in support of its motion to dismiss pursuant
3  to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or in
4  the alternative, to dismiss pursuant to Rule 12(b)(3) for improper venue or to
5  transfer venue to the District of Massachusetts, pursuant to 28 U.S.C. §§ 1404 or
6  1406(a).

7    **I.    Introduction**

8    Plaintiff Visions of America, LLC ("Plaintiff") alleges that the Court has
9  general jurisdiction over the BSO based on a claim that the BSO "directs substantial
10 and pervasive activities at the residents of California".  Complaint ¶ 15.  Contrary to
11 this allegation, the BSO's revenue from California averaged **less than one percent**
12 of its total revenue over the last three years.  Declaration of Thomas D. May, Chief
13 Financial Officer of the BSO ("May Dec.") ¶ 10.  The BSO is not incorporated in
14 California and has no offices, employees, agents or licenses in California.  May
15 Dec. ¶¶ 3-8.  As set forth in Point IV(B) below, the facts do not come close to
16 meeting the very stringent standard for general jurisdiction, which requires contacts
17 with the state that approximate physical presence.  As a result, this action should be
18 dismissed because the BSO is not generally subject to suit in California.

19   Plaintiff does not even attempt to allege specific jurisdiction in the Complaint
20 because all relevant events occurred in Massachusetts.  The contract was negotiated
21 in Massachusetts, the "Visions of America" project that was the subject of the
22 contract was promoted jointly by the parties in Massachusetts and the performances
23 using the pictures and music at issue occurred in Massachusetts.  Declaration of
24 Ray F. Wellbaum, Orchestra Manager of the BSO ("Wellbaum Dec.") ¶¶ 7-11; 26-
25 27; 30.  In fact, Plaintiff sent the BSO a demand letter prior to instituting the action
26 and attached a draft complaint, captioned for filing in the *District of Massachusetts*,
27 stating that, "**a substantial part of the events, omissions and harm giving rise to**
28 **Plaintiff's claims occurred within the District of Massachusetts.**"  (Emphasis

1  supplied.) Exhibit C, p. 20 ¶ 14.[1]  Any argument by Plaintiff at this juncture that the
2  events of the case are sufficiently connected to California in manner that would
3  permit specific jurisdiction is baseless.

4  In the alternative, the action should be transferred to the District of
5  Massachusetts pursuant to 28 U.S.C. §§1404 or 1406(a) because all the operative
6  events occurred in Massachusetts, Massachusetts law governs this contract dispute,
7  and there is a significant presence of non-party witnesses in Massachusetts.  As set
8  forth in Point IV(D), the balance of the venue factors tip decidedly in favor of
9  transfer.

10  **II.    The Allegations in the Complaint**

11  The Complaint alleges that Plaintiff and the BSO entered into an agreement
12  concerning the use of Plaintiff's artistic elements (photographs and score) during
13  the 2011-12 Boston Pops season, but that this agreement was "never committed to
14  writing".  Complaint ¶ 38.  Plaintiff claims that pursuant to this alleged oral
15  agreement, the BSO agreed to pay some unspecified consideration for use of the
16  materials.  Complaint ¶ 49.

17  Contrary to Plaintiff's allegations of an oral agreement, the parties'
18  understanding is memorialized in a written document executed in June 2011.
19  Exhibit A (the "Agreement").  Pursuant to the Agreement, Plaintiff permitted the
20  BSO to use the artistic materials at issue in exchange for Plaintiff's ability to use its
21  association with the BSO to try to promote Plaintiff's "Visions of America
22  Marketing Platform".  Plaintiff's concept, as set forth in the Agreement, was that it
23  could obtain sponsorships from "major American companies" (Plaintiff's main
24  target was Chrysler) based on its association with the BSO.  Exhibit A, p. 10.

25  Any payment to Plaintiff was expected to come from sponsorship funds
26  obtained by Plaintiff, <u>not</u> from the BSO.  Complaint ¶ 50; Wellbaum Dec. ¶ 16.

27

28  [1] All Exhibits referred to in this memorandum are attached to the Wellbaum Dec.

DEFENDANT'S MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK
OF PERSONAL JURISDICTION, OR TO DISMISS FOR IMPROPER VENUE OR TRANSFER VENUE

Blecher Collins
Pepperman & Joye

There was no agreement for the BSO to pay anything, under any circumstances. In fact, the BSO was entitled to payment from any sponsorship funds obtained by Plaintiff. Exhibit A, p. 11.

Ultimately, Plaintiff's sponsorship solicitation efforts were unsuccessful. Plaintiff and the BSO received no payment from Plaintiff's efforts to market "Visions of America". Wellbaum Dec. ¶ 32; Complaint ¶ 51. Plaintiff's Complaint now seeks compensation from the BSO, with no mention of the written Agreement. Plaintiff instead attempts to formulate claims based on the alleged "oral agreement" for unspecified compensation.

## III.   Jurisdictional Facts

### A.   The BSO's Contacts with California

The BSO is a Massachusetts non-profit entity that has operated in Massachusetts for 95 years. May Dec. ¶ 3. Several ensembles perform under the auspices of the BSO, including the Boston Symphony Orchestra and the Boston Pops Orchestra ("Boston Pops"). Wellbaum Dec. ¶ 3. The BSO's entire business operations are located in Massachusetts, and primarily at Symphony Hall in Boston. May Dec. ¶ 4; Wellbaum Dec. ¶ 5.

The BSO is not incorporated in California and has limited contact with California. The BSO has: (1) No offices in California; (2) No employees in California; (3) No company files located in California; (4) No telephones in California; (5) No bank accounts in California; (6) No license to do business or any other license in California; and (7) No registered agent for service of process in California. May Dec. ¶¶ 5-8. The BSO has never owned or leased property in California and has not paid or been required to pay taxes in California. May Dec. ¶ 9.

Some California residents enjoy seeing the BSO's performances. The same is true for residents throughout the country and the world. The reality is that the BSO does very little business in California. As demonstrated by the BSO's revenue

Blecher Collins
Pepperman & Joye

1   over the last three years, which is comprised of contributions, ticket sales and tour

2   fees, **revenue derived from California averaged just 0.97% of the BSO's total**

3   **revenue**.  May Dec. ¶ 10.

4       **B.    The Agreement**

5       With regard to the parties' relationship, the Complaint alleges that:

6   "Beginning in May 2011, VOA entered into discussions with BSO regarding the

7   possibility of the Pops and VOA working together to perform the Photo Symphony

8   as part of the Pops' 2011-12 season."  Complaint ¶ 35.

9       Indeed, in June, 2011, Joseph Sohm, the principal of the Plaintiff, came to

10  Massachusetts to present a business opportunity to the BSO.  The BSO's leadership

11  team was present at Symphony Hall in Boston for that meeting, including the

12  Managing Director of the BSO.  Wellbaum Dec. ¶¶ 7-11.  Also present at the

13  meeting was Plaintiff's marketing agent, David Rich, who is from Boston.

14  Wellbaum Dec. ¶ 9.

15      At the June 3 meeting, Mr. Sohm and his associates presented a concept

16  called "Visions of America."  Mr. Sohm envisioned Boston Pops performances that

17  incorporated a visual display of his photographs set to music.  Wellbaum Dec. ¶ 14.

18  As discussed at the meeting, all of the "Visions of America" musical performances

19  were to be held in Boston, during the 2012 Boston Pops season.  *Id*.  The

20  understanding was that Mr. Sohm would contribute artistic elements to the

21  performances (photographs and the score) and that the Boston Pops performances

22  would provide the platform he needed to seek corporate sponsorship and a

23  syndicated television program for "Visions of America".  If successful, both

24  Plaintiff and the BSO would share in the revenue.  The BSO liked the idea and

25  agreed to move forward.  After the meeting, the parties executed a letter Agreement,

26  which memorialized the understanding developed at the June 3 meeting.  Wellbaum

27  Dec. ¶¶ 18-19; Exhibit A.

28

DEFENDANT'S MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK
OF PERSONAL JURISDICTION, OR TO DISMISS FOR IMPROPER VENUE OR TRANSFER VENUE

Blecher Collins
Pepperman & Joye

1   On October 12, 2011, the BSO hosted a Group Leader Event at the Fairmont

2   Copley Plaza hotel in Boston.  The event featured Boston Pops music director,

3   Keith Lockhart, and Joseph Sohm.  Wellbaum Dec. ¶ 26.  The purpose of this event

4   was to promote the Visions of America project and to assist Mr. Sohm in seeking

5   corporate sponsorship from local businesses in Boston.  *Id.*; Exhibit B (copy of

6   promotional invitation used for this event).  Mr. Sohm and Mr. Lockhart also

7   participated in several media interviews, all of which occurred in Boston.

8   Wellbaum Dec. ¶ 27.  As set forth in the Complaint, the BSO promoted the Visions

9   of America concerts in print, on billboards, in shopping centers, at bus stops, and in

10  various other places, all in the Boston area.  Complaint ¶ 43; *see also* Wellbaum

11  Dec. ¶ 28.  No advertisements were targeted at California.  Wellbaum Dec. ¶ 28.

12  In the spring of 2012, Mr. Sohm rented an apartment in Boston and stayed

13  there during preparation for the concerts and to attend the performances.  Wellbaum

14  Dec. ¶ 29.  The Boston Pops' "Visions of America" performances were held on

15  May 18, 20, 22, 26, and June 14-16.  All performances took place at Symphony

16  Hall in Boston.  Wellbaum Dec. ¶ 30; Complaint ¶ 40.

17  Plaintiff ultimately failed to secure any corporate sponsorship for "Visions of

18  America" and its aspirations for a television program fizzled.  Mr. Sohm

19  subsequently approached the BSO and asked for compensation for use of his works

20  at the concerts.  The BSO rejected Mr. Sohm's request because under the

21  Agreement, the BSO had no payment obligation.  Wellbaum Dec. ¶ 33.

22  By letter dated April 30, 2013, Plaintiff's counsel made a demand for

23  payment from the BSO.  Exhibit C.  Attached to the letter was a draft complaint,

24  captioned for the United States District Court for the District of Massachusetts.

25  The draft Complaint alleged that, "a substantial part of the events, omissions, and

26  harm giving rise to Plaintiff's claims occurred within the district of Massachusetts."

27  Exhibit C, p. 20 ¶ 14.  Despite asserting that this case was based on events in

28

-5-

Blecher Collins
Pepperman & Joye

BC
PI

1  Massachusetts and threatening suit in Massachusetts, Plaintiff subsequently filed

2  this action in this Court.

3  **IV.   ARGUMENT**

4  **A.   Standard**

5  Personal jurisdiction over a non-resident defendant may exist if the defendant

6  has either a continuous and systematic presence in the state (general jurisdiction), or

7  minimum contacts with the forum state such that the exercise of jurisdiction "does

8  not offend traditional notions of fair play and substantial justice" (specific

9  jurisdiction). *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90

10  L.Ed. 95 (1945). Where there is no federal statute applicable to determine personal

11  jurisdiction, a district court should apply the law of the state where the court sits.

12  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

13  California law requires only that the exercise of personal jurisdiction comply with

14  federal due process requirements. *See id.*, at 800–01.

15  Fed. R. Civ. Proc. Rule 12(b)(2) governs dismissal for lack of personal

16  jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 921 (9th Cir. 2001). When

17  confronted with a motion to dismiss, the plaintiff bears the burden of establishing

18  that jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir.

19  2008). The plaintiff cannot "simply rest on the bare allegations of its complaint,"

20  but uncontroverted allegations in the complaint are taken as true. *Schwarzenegger*,

21  *supra*, 374 F.3d at 800 (quoting *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d

22  784, 787 (9th Cir. 1977)). The court does "not assume the truth of allegations in a

23  pleading which are contradicted by affidavit," *Data Disc, Inc. v. Sys. Tech. Assocs.,*

24  *Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977), but resolves genuine factual disputes in

25  the plaintiff's favor. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir.

26  2006).

27

28

Blecher Collins
Pepperman & Joye

**B.      There Is No General Jurisdiction Over the BSO in California**

General jurisdiction may be established when a defendant's contacts with a state are "substantial" or "continuous and systematic" such that the defendant "can be haled into court in that state in any action, even if the action is unrelated to those contacts." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). Courts have been reluctant to exercise general jurisdiction. *Cf. Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848 at 851 n. 3 850 (9th Cir. 1993) (noting that "[t]he Supreme Court has upheld general jurisdiction only once"). The Ninth Circuit has set a high standard for general jurisdiction. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (*en banc*). General jurisdiction requires that the defendant's contacts be of the sort that approximate physical presence. *Gator.com Corp. v. L.L. Bean, Inc*., 341 F.3d 1072, 1076 (9th Cir. 2003).

"The standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'" *King v. Am. Family Mut. Ins. Co.,* 632 F.3d 570, 579 (9th Cir. 2011). This general jurisdiction standard is exacting, because a finding of general jurisdiction permits a defendant to answer for any of its activities in the forum state that occurred anywhere in the world. *See id*. (quoting *Schwarzenegger, supra,* 374 F.3d at 801).

For general jurisdiction, "factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the [district], serves the [district's] markets, designates an agent for service of process, holds a license, or is incorporated there." *Bancroft & Masters, Inc., supra,* 223 F.3d at 1086; *Amoco Egypt Oil Co., supra,* 1 F.3d at 851 (noting courts have "regularly declined to find general jurisdiction even where the contacts were quite extensive").

Blecher Collins
Pepperman & Joye

1    Other relevant types of forum activities include keeping an office and

2  company files, holding meetings, distributing checks, and doing business with a

3  bank. *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437, 445 (1952).  In

4  viewing the factors, the Court should "focus upon the 'economic reality' of the

5  defendant's activities rather than a mechanical checklist." *Gator.Com Corp., supra*,

6  341 F.3d at 1077 (*citing Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th

7  Cir. 1984)).

8    Following the standard, general jurisdiction over the BSO is improper

9  because:

10    1. Over the last three years, the BSO's revenue from California averaged <u>less</u>

11       <u>than 1%</u> of its total revenue;

12    2. The BSO has always been a non-profit entity incorporated in

13       Massachusetts and is not incorporated in California;

14    3. All of the BSO's operations are located in Massachusetts;

15    4. The BSO does not have any offices or employees in California;

16    5. The BSO has no company files, telephones or bank accounts in California;

17    6. The BSO is not licensed to do business in California, nor does it hold any

18       other license in California;

19    7. The BSO has no registered agent for service of process in California; and

20       The BSO has never owned or leased property in California; and has not

21       paid or been required to pay taxes in California.  May Dec. ¶¶ 3-9.

22    Plaintiff alleges that the BSO has done business with California residents,

23  conducted performances and auditions in California, and received donations

24  from California patrons.  Complaint ¶ 15.  Even taking these allegations in the

25  light most favorable to the Plaintiff, given the very low amount of revenue from

26  California, they merely demonstrate that the BSO has conducted a very small

27  amount of business with California residents.

28

Blecher Collins
Pepperman & Joye

1    The case law in this Circuit demonstrates that generating less than 1% of

2    total revenue from California is not close to the magnitude of business required

3    to confer general jurisdiction. *See Shute v. Carnival Cruise Lines*, 897 F.2d 377,

4    381 (9th Cir. 1990) (stating that 1.29% and 1.06% of revenue in two years was

5    not sufficient for general jurisdiction and would violate due process), *rev'd on*

6    *other grounds*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991); *Injen*

7    *Tech. Co. Ltd. v. Advanced Engine Mgmt.*, 270 F.Supp.2d 1189, 1194 (S.D.Cal.

8    2003) (sales by defendant to forum state, which "account[ed] for only 2% of its

9    total business, are not the kind of 'systematic and continuous' contacts that

10   would warrant the exercise of general jurisdiction"); *Eliminator Custom Boats v.*

11   *American Marine Holdings, LLC*, 2006 WL 4941830 at *2 (C.D.Cal. 2006)

12   (2.3% of sales in California insufficient for general jurisdiction); *Focht v. Sol*

13   *Melia S.A.*, 2012 WL 162564 at *7-8 (N.D.Cal. 2012) (less than 1% of sales

14   revenue from forum state insufficient for general jurisdiction); *Brady v. Conseco,*

15   *Inc.*, 2009 WL 2356201 at *7  (N.D.Cal. 2009) (Defendant's sales to California

16   residents accounting for 7.1 percent of its total 2008 premiums insufficient to

17   confer general jurisdiction).

18   Even in cases where there were more extensive contacts with the forum

19   then present here, the decisions in this Circuit have routinely declined to exercise

20   general jurisdiction. *See Mavrix Photo, Inc. v. Brand Technologies, Inc.*  647

21   F.3d 1218, 1225 (9th Cir. 2011) (holding that ticket sales and interactive website

22   among other forum contacts insufficient for general jurisdiction); *CollegeSource,*

23   *Inc. v. AcademyOne, Inc.*  653 F.3d 1066, 1075 (9th Cir. 2011) ("[m]arketing to

24   forum residents, at least where such marketing does not result in substantial and

25   continuous commerce with the forum, does not support general jurisdiction");

26   *Congoleum Corp. v. DLW Aktiengesellschaft*, 729 F.2d 1240, 1242 (9th

27   Cir.1984) (no general jurisdiction despite solicitation of orders, promotion of

28   products to potential customers through the mail and through showroom

-9-

Blecher Collins
Pepperman & Joye

1   displays, and attendance at trade shows and sales meetings); *Bancroft & Masters,*

2   *supra, 223 F.3d at 1086* (holding that a company that has license agreements

3   with two television networks, relationships with California and sold tickets in

4   California was doing business with California, but not doing business in

5   California); *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986)

6   (occasional car sales to California residents insufficient to confer general

7   jurisdiction); *LP Digital Solutions v. Signifi Solutions, Inc.*, 2013 WL 425091

8   (C.D.Cal. 2013) (defendant's limited contacts with California coupled with only

9   "an insignificant portion" of total sales and revenue coming from California is

10  sufficient to preclude the exercise of general jurisdiction over defendant).

11      Therefore, there is no basis for general jurisdiction over the BSO.

12  **C. There Is No Specific Jurisdiction over the BSO**

13      Plaintiff's Complaint relies solely on allegations of general jurisdiction.

14  Complaint ¶ 15.  Indeed, Plaintiff has conceded that the operative facts underlying

15  this action occurred in Massachusetts because in the draft complaint it sent to the

16  BSO, Plaintiff stated, "a substantial part of the events, omissions, and harm giving

17  rise to Plaintiff's claims occurred within the district of Massachusetts."  Exhibit C,

18  p. 20 ¶ 14.  This admission undercuts any argument concerning specific

19  jurisdiction.

20      To the extent the Court considers any specific jurisdiction argument, there is

21  no basis to conclude that this case arises from any contacts by the BSO with

22  California.  To establish specific jurisdiction, three requirements must be met: (1)

23  purposeful availment to the forum by the defendant; (2) the claim arises out of or

24  relates to the defendant's forum-related activities; and (3) the exercise of

25  jurisdiction must comport with fair play and substantial justice - it must be

26  reasonable. *See Schwarzenegger, supra,* 374 F.3d at 800–01.

27      None of these requirements are met here.  The Complaint alleges that:

28

-10-

Blecher Collins
Pepperman & Joye

Blecher Collins
Pepperman & Joye

1    Beginning in May 2011, VOA entered into discussions with

2    BSO regarding the possibility of the Pops and VOA working

3    together to perform the Photo Symphony as part of the Pops'

4    2011-12 season.  Complaint ¶ 35.

5    From the date the Complaint alleges the discussions began, **each and every**

6    **operative fact occurred in Massachusetts**.  In June, 2011, Mr. Sohm came to

7    Massachusetts to pitch the "Visions of America" business concept to the BSO's

8    leadership at Symphony Hall in Boston.  Wellbaum Dec. ¶¶ 7-11.   The subsequent

9    letter Agreement memorialized the understanding developed at that meeting.

10   Exhibit A.   The Agreement was signed in Boston by the BSO and Plaintiff's

11   Boston-based marketing agent, David Rich.  Wellbaum Dec. ¶ 22.

12   In October, 2011, Mr. Sohm again came to Massachusetts to promote the

13   project at an event at the Fairmont Copley Plaza in Boston.  Wellbaum Dec. ¶ 26;

14   Exhibit B.   No such promotional events occurred in California.   Mr. Sohm

15   participated in several media interviews about the project in Boston.   Wellbaum

16   Dec. ¶ 27.    He also rented an apartment in Boston in connection with the

17   performances.  Wellbaum Dec. ¶ 29.  As expressly set forth in the Complaint, the

18   advertisements that Plaintiff alleges forms its claims appeared at Symphony Hall

19   and the Prudential Center (both in Boston) and were "*placed throughout the streets*

20   *of Boston.*"  (Emphasis supplied.) Complaint ¶ 43.

21   Importantly, all of the performances of "Visions of America" took place in

22   Boston and none occurred in California.  Wellbaum Dec. ¶ 30; Complaint 40.

23   Based on these facts, the BSO did not purposefully avail itself of California.

24   *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) (a

25   defendant's purposeful conduct and connection with the forum state must be such

26   that the defendant "should reasonably anticipate being haled into court there");

27   *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.8 (1984)

28   (specific jurisdiction exists when a suit arises out of or is related to the defendant's

-11-

1   contacts with the forum); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("[I]t is

2   essential in each case that there be some act by which the defendant purposefully

3   avails itself of the privilege of conducting activities within the forum State, thus

4   invoking the benefits and protections of its laws."); *Burger King Corp. v.*

5   *Rudzewicz*, 471 U.S. 462, 475 (1985) (The purposeful availment requirement

6   ensures that a defendant will not be required to litigate in a forum solely as a result

7   of "random," "fortuitous," or "attenuated" contacts, or the unilateral activity of

8   another person).

9        The second required element - that the claim relate to activity in the forum -

10  is also not satisfied.  While the BSO does a very small amount of business related to

11  California amounting to less than 1% of its revenue, this claim does not arise out of

12  that business; rather, it relates to the relationship between the parties that was

13  consummated in Massachusetts, and the Boston Pops' performances in

14  Massachusetts.  Because no part of this claim arises from business by the BSO in

15  California, the second prong of the specific jurisdiction test is not met.

16       Finally, it is not fair or reasonable for the BSO to defend this case in

17  California.   The BSO is a non-profit entity that performed its concerts in

18  Massachusetts as it typically has done for 95 years.  Plaintiff injected itself in

19  Massachusetts for this project.   Based on all of the facts and contacts with

20  Massachusetts, it is fair and reasonable that the resolution of Plaintiff's claim be

21  addressed in that location.

22           **D.     Venue**

23               **i.   Dismissal For Improper Venue or Transfer Pursuant to**

24                    **28 U.S.C. § 1406(a)**

25       In the alternative, the Court should dismiss the action pursuant to Fed. R.

26  Civ. Proc. Rule 12(b)(3) for improper venue or transfer the action pursuant to 28

27  U.S.C. § 1406(a).  The federal venue statute provides that a civil action "may be

28  brought in (1) a judicial district in which any defendant resides, if all defendants are

-12-

Blecher Collins
Pepperman & Joye

1   residents of the State in which the district is located; (2) a judicial district in which

2   a substantial part of the events or omissions giving rise to the claim occurred, or a

3   substantial part of property that is the subject of the action is situated; or (3) if there

4   is no district in which an action may otherwise be brought as provided in this

5   section, any judicial district in which any defendant is subject to the court's

6   personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b).  Pursuant to

7   28 U.S.C. § 1406(a), "The district court of a district in which is filed a case laying

8   venue in the wrong division or district shall dismiss, or if it be in the interest of

9   justice, transfer such case to any district or division in which it could have been

10  brought."

11       Here, the Plaintiff pleaded that venue is proper under 28 U.S.C. § 1391

12  "because **<u>VOA</u>** is located in this judicial district and because this is a judicial

13  district in which a substantial part of the events or omissions giving rise to the claim

14  occurred."  (Emphasis supplied.) Complaint ¶ 14.  However, pursuant to 28 U.S.C.

15  § 1391(b)(1), the location of the *Plaintiff* is irrelevant.  Plaintiff's pleading

16  regarding venue states nothing about the location of the BSO.  Therefore, there is

17  nothing that could satisfy 28 U.S.C. § 1391(b)(1).

18       Section (b)(2) of the venue statute does not help the Plaintiff, because

19  Plaintiff previously admitted that the events giving rise to the its claims occurred in

20  Massachusetts, not in the Central District of California.  Exhibit C, p. 20 ¶ 14.

21  Plaintiff's admission is corroborated by the facts set forth in the Declaration of BSO

22  Orchestra Manager Raymond Wellbaum (June 2011 meeting in Boston (Wellbaum

23  Dec. ¶¶ 7-11); October 2011 promotional event in Boston (*Id.* ¶ 26); Media

24  interviews in Boston (*Id.* ¶ 27); All performances in Boston (*Id.* ¶ 30)).  Plaintiff's

25  attempt to now state in the Complaint filed in this Court, without any support, that

26  the events giving rise to the claim occurred in this District, is baseless and flies in

27  the face of its previous assertion that the action arose in Massachusetts.  Because

28

Blecher Collins
Pepperman & Joye

-13-

1  the events of the case clearly occurred in Massachusetts, venue is not proper in this

2  District under 28 U.S.C. § 1391(b)(2).

3      Section (b)(3) of the venue statute is not applicable unless there is no other

4  judicial district where venue is proper, which is not the case here.  Venue is proper

5  in the District of Massachusetts under both sections (1) and (2).  Therefore, venue is

6  not proper in this District and Plaintiff's action should be dismissed pursuant to 28

7  U.S.C. § 1406(a).

8      **ii.**    **The Court Should Transfer this Case to the District of**

9          **Massachusetts Pursuant to 28 U.S.C. § 1404**

10      **1.**    **This Action Could Have Been Brought in the District of**

11          **Massachusetts**

12      As stated above, Plaintiff could have brought this case in the District of

13  Massachusetts.  Diversity of citizenship under 28 U.S.C. § 1332 is the basis for

14  jurisdiction.  Pursuant to 28 U.S.C. § 1391(b)(1)  or (2), the case may be heard in

15  the District of Massachusetts because that is the judicial district where the BSO

16  resides and where a substantial part of the events or omissions giving rise to the

17  claim occurred.

18      **2.**    **Standard for Transfer of Venue**

19      28 U.S.C. § 1404(a) provides:  "For the convenience of the parties and

20  witnesses, in the interest of justice, a district court may transfer any civil action to

21  any other district or division where it might have been brought . . . ."

22      Courts usually weigh and balance a variety of factors when determining if a

23  transfer is appropriate, and these factors vary based upon the facts in the particular

24  case.  *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (stating the

25  court must make a flexible and individualized analysis based on the action's

26  circumstances).  The Ninth Circuit has held that the district court has discretion "to

27  adjudicate motions for transfer according to an individualized, case-by-case

28  consideration of convenience and fairness" and outlined the following factors that

Blecher Collins
Pepperman & Joye

-14-

may be considered in determining whether to transfer venue under Section 1404(a):

(1) The location where the relevant agreements were negotiated and executed;(2) The state that is most familiar with the governing law; (3) The plaintiff's choice of forum; (4) The respective parties' contacts with the forum; (5) The contacts relating to the plaintiff's cause of action in the chosen forum; (6) The differences in the costs of litigation in the two forums; (7) The availability of compulsory process to compel attendance of unwilling non-party witnesses; and (8) The ease of access to sources of proof. *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 498 (9th Cir. 2000).

Although courts must balance all of these factors, the convenience of the witnesses is often the most important factor. *See Heley v. Spencer*, 2010 WL 669220, at *1 (C.D.Cal. 2010) (*citing Decker Coal Co. v. Commonwealth Edison, Co*., 805 F.2d 834, 843 (9th Cir.1986)); *see also Allstar Mktg. Group, LLC v. Your Store Online, LLC,* 666 F.Supp.2d 1109, 1132 (C.D.Cal. 2009).

Courts have also commonly articulated that the relevant factors include the relative court congestion and time of trial in each forum. *See Heley, supra,* 2010 WL 669220 at *1.

### 3.    The Agreement Was Negotiated In Massachusetts.

Negotiations for the relevant Agreement in this case commenced in Massachusetts, when Plaintiff's principle Joseph Sohm traveled to Symphony Hall in Boston and presented his concept to the BSO.  Wellbaum Dec. ¶¶ 7-19.  The Agreement was signed in Boston by two of the three parties, the BSO and the George P. Johnson Company (Plaintiff's marketing agent).  Wellbaum Dec. ¶¶ 21-22.  Accordingly, this factor favors transfer.

### 4.  Massachusetts Law Applies to this Contract Dispute

"To determine the applicable substantive law, a federal court sitting in diversity applies the choice-of-law rules of the forum." *Narayan v. EGL, Inc*. 616 F.3d 895, 898 (9th Cir. 2010).  For contract actions such as this, California Civil

Blecher Collins
Pepperman & Joye

1  Code § 1646 provides that "[a] contract is to be interpreted according to the law and

2  usage of the place where it is to be performed; or, if it does not indicate a place of

3  performance, according to the law and usage of the place where it is made."  A

4  contract "indicates a place of performance within the meaning of section 1646 if the

5  intended place of performance can be gleaned from the nature of the contract and its

6  surrounding circumstances." *Frontier Oil Corp. v. RLI Ins. Co.*, 153 Cal.App.4th

7  1436, 63 Cal.Rptr.3d 816, 827 (Cal.Ct.App.2007) ("The intended place of

8  performance is a question of contract interpretation for the court to decide, except

9  to the extent the answer may depend on the credibility of extrinsic evidence.").

10  This is a contract dispute arising out of negotiations in Massachusetts for

11  services to be exclusively provided in Massachusetts, namely, the performances of

12  the "Visions of America" photo symphony at Symphony Hall for the 2012 Boston

13  Pops Spring Season.  Wellbaum Dec. ¶¶ 7-22; Exhibit A.  The Complaint is devoid

14  of any allegation that the Agreement contemplated performance anywhere but at

15  Symphony Hall in Boston.  Indeed, the Complaint alleges that the agreement was

16  for the licensing and performance of the photo symphony "during the 2011-12 Pops

17  season" which took place in Boston.  Complaint ¶ 37.  Pursuant to California Civil

18  Code § 1646, therefore, the Agreement will be governed under the laws of

19  Massachusetts.

20  Because the Massachusetts court is the most familiar with governing

21  Massachusetts law, this factor favors transfer.

22  **5. The Majority of the Key Witnesses and Evidence Is in**

23  **Massachusetts and Compulsory Process Is Not Available to Non-**

24  **Party Witnesses**

25  The key non-party witnesses in this case are from Massachusetts.

26  Specifically, David Rich signed the Agreement on behalf of the George P. Johnson

27  Company.  Wellbaum Dec. ¶ 21.  The George P. Johnson Company was responsible

28  for securing corporate sponsorship.  Complaint ¶ 50; Wellbaum Dec. ¶ 17.  Mr.

-16-

Blecher Collins
Pepperman & Joye

1   Rich lives in Massachusetts and is located in the Boston office of the George P.

2   Johnson Company at 711 Atlantic Avenue, Boston, Massachusetts. Wellbaum Dec.

3   ¶ 9.

4   Vinnie Sestito of Experience Partners, Inc., attended the June 3, 2011

5   meeting where the Agreement was negotiated and worked for Mr. Sohm throughout

6   the project. Wellbaum Dec. ¶ 10. Mr. Sestito's office is located at 18 Thicket

7   Circle, Stow, Massachusetts, and he lives in Massachusetts. Wellbaum Dec. ¶ 11.

8   Each of these witnesses will testify regarding the negotiations of the

9   Agreement and the conduct by the parties related to the Agreement after the

10  Agreement was signed. Wellbaum Dec. ¶¶ 7-23. The BSO expects that testimony

11  will show that the Plaintiff did not negotiate for, nor could it have any reasonable

12  expectation that it was entitled to compensation from the BSO as alleged. The BSO

13  expects that these witnesses will also support that Mr. Sohm was unable to secure

14  corporate sponsorship and looked to the BSO to renegotiate the deal only after he

15  was unable to do so. These witnesses, while they may be subpoenaed for a

16  deposition, are not subject to compulsory process for trial.

17  In addition, the BSO expects that the following employees or former

18  employees will be called, all of whom are located in Massachusetts: Mark Volpe

19  (Managing Director); Kim Noltemy (Chief Marketing and Communications

20  Officer); Dennis Alves (Boston Pops Director of Artistic Planning); Keith Lockhart

21  (Boston Pops Music Director); Bernadette Horgan (Boston Pops Director of Media

22  Relations), and Margot Saulnier (former Boston Pops Assistant Director of Artistic

23  Planning). These witnesses were all present at the meeting on June 3, 2011, for the

24  Plaintiff's presentation and contract negotiations. Wellbaum Dec. ¶ 7.

25  Each of these witnesses will testify regarding the negotiations of the

26  Agreement and the conduct by the parties related to the Agreement after the

27  Agreement was signed. The BSO expects that such evidence will refute Plaintiff's

28  claims that it is entitled to compensation under the Agreement. They will also

Blecher Collins
Pepperman & Joye

DEFENDANT'S MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FOR LACK
OF PERSONAL JURISDICTION, OR TO DISMISS FOR IMPROPER VENUE OR TRANSFER VENUE

1  testify to Plaintiff's providing unrestricted consent to use his materials, which will

2  disprove Plaintiff's breach/infringement claims.

3      Finally, a vast amount of documents in this case, including revenue from the

4  concerts, advertisement and promotion, and email communications, will come from

5  the BSO's offices in Boston.  May Dec. ¶ 6.

6      Accordingly, the location of all of these witnesses and evidence in

7  Massachusetts favors transfer.

8  **6. Plaintiff's Choice of Forum Is not Dispositive Because Plaintiff has**

9  **No Contacts Relating to its Cause of Action in the Chosen Forum**

10  "[P]laintiff's choice of forum ... is not the final word.  In judging the weight

11  to be given such a choice, consideration must be given to the extent both of the

12  defendant's business contacts with the chosen forum and of the plaintiff's contacts,

13  including those relating to his cause of action.  If the operative facts have not

14  occurred within the forum of original selection ... the plaintiff's choice is entitled

15  only to minimal consideration."  *B & B Hardware, Inc. v. Hargis Industries, Inc*.,

16  2006 WL 4568798, 4 (C.D.Cal. 2006) (citing *Pac. Car & Foundry Co. v. Pence,*

17  403 F.2d 949, 954 (9th Cir.1968); *see also Global Decor, Inc. v. Cincinnati Ins.*

18  *Co*.  2011 WL 2437236, 4 (C.D.Cal. 2011) (citing *Lou v. Belzberg,* 834 F.2d 730,

19  739 (9th Cir. 1987)); *Johnson v. Zepp*  2010 WL 5116697, 3 (C.D.Cal. 2010).

20      In *B & B Hardware, Inc.*, *supra*, this Court transferred an action to Arkansas

21  even though the Plaintiff was a resident of California because the Plaintiff could

22  "point to no behavior by Defendant that would justify a finding that 'a substantial

23  part of the events or omissions giving rise to the claim occurred' in this district."

24  *Id*.  The Court noted that only a minuscule portion of the defendant's sales occurred

25  in California, noting that less than 2% of the defendant's sales revenue was

26  generated in the Ninth Circuit's jurisdiction.  *Id*.  The Court found that because the

27  defendant's allegedly infringing behavior was centralized in and around Arkansas,

28  the factor weighs in favor of transferring the case to that forum.  *Id*.

-18-

Blecher Collins
Pepperman & Joye

BC
PJ

Here, as in *B & B Hardware, Inc.*, all of the allegations that form the nucleus of Plaintiff's complaint are centralized in and around Massachusetts. Accordingly, this factor weighs in favor of transferring the case to Massachusetts because the claims have nothing to do with California. Moreover, the Court may disregard a plaintiff's choice of forum where the plaintiff's suit is the result of forum-shopping. *Alltrade. Inc., v. Uniweld Products, Inc.*, 946 F.2d 622, 628 (9th Cir.1991). Plaintiff's choice of forum should be disregarded because Plaintiff represented to the BSO that is was going to bring suit in the federal court located in Massachusetts, sent the BSO a draft complaint captioned in the Massachusetts District Court and acknowledged in that document that "a substantial part of the events, omissions, and harm giving rise to Plaintiff's claims occurred within the district of Massachusetts." Exhibit C, p. 20 ¶ 14. Thus, by its own admission Massachusetts, not California, is the site of the material facts and events giving rise to Plaintiff's claims and the filing in California is an obvious effort to secure an unfavorable forum for the BSO.

### 7. Judicial Economy Favors Transferring this Case to Massachusetts

Courts look at the relative court congestion in each forum in deciding on a transfer of venue and have relied on Administrative Office statistics. *See, e.g., Gill v. Simpson*, 2012 WL 4863808 at *6 (E.D.Cal. 2012). The Central District of California has a more congested docket. As of March 31, 2012, the Central District of California had 10,493 civil cases pending, while the District of Massachusetts had 2,926 civil cases pending. *See* Federal Caseload Statistics 2011, Table C at pp. 41-43.[2] This factor weighs in favor of transfer.

---

[2] This table may be found at the United States Courts website: http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/FederalJudicialCaseloadStatistics/2012/tables/C00Mar12.pdf

Blecher Collins
Pepperman & Joye

-19-

1   Because this case clearly arose in Massachusetts and the factors

2   overwhelmingly favor transfer, this Court should, in the alternative, transfer the

3   case to the District of Massachusetts.

4   **V.   <u>Conclusion</u>**

5   For the reasons set forth above, the BSO requests that this action be

6   dismissed in its entirety or that the action be transferred to the District of

7   Massachusetts.

8

9

10   Dated:  August 23, 2013          COHEN KINNE VALICENTI & COOK LLP

11                                    David Valicenti
                                      Christopher M. Hennessey
12                                    28 North Street, 3rd Floor
                                      Pittsfield, Massachusetts  01201
13                                    Telephone:  (413) 443-9399
                                      Facsimile:  (413) 442-9399
14

15                         By:      /s/ David Valicenti

16                                    Attorneys for Defendant  BOSTON
                                      SYMPHONY ORCHESTRA, INC
17

18   57078.1

19

20

21

22

23

24

25

26

27

28

-20-

Blecher Collins
Pepperman & Joye